**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION**

| | | |
|---|---|---|
| MILCA GUERRERO, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. AW-03-1700 |
| WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY (WMATA), | * | |
| | * | |
| Defendant | | |

*****

**MEMORANDUM OPINION**

This action involves an Title VII discrimination suit brought by Milca Guerrero ("Guerrero" or "Plaintiff") against the Washington Metropolitan Area Transit Authority (WMATA) ("WMATA" or "Defendant"). Currently pending before the Court is Defendant's Motion for Summary Judgment [21]. The Court has reviewed the entire record, as well as the pleadings with respect to the instant motion. No hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2004). For the reasons stated below, the Court will grant Defendant's Motion for Summary Judgment.

**I.     FACTUAL & PROCEDURAL BACKGROUND**

The following facts are taken in the light most favorable to the non-movant. Guerrero is a Hispanic American female of Panamanian descent. Since 1982, Guerrero has been employed with the WMATA.

Guerrero alleges that, since 1998, she experienced various types of harassment by supervisors and fellow employees. Guerrero alleges in her Complaint that, during her tenure with WMATA, she was

1

involved in several altercations with Evelyn Verne ("Verne"), a fellow employee. Specifically, Guerrero alleges that: (1) on December 25, 2002, Verne shouted at Guerrero; (2) on January 10, 2003, Verne called Guerrero a "bitch" and attempted to block Guerrero's way of passage; and (3) on March 21, 2003, Verne pushed and threatened Guerrero. Additionally, Guerrero alleged in her deposition taken in this case that an employee in the Car Maintenance Department, who was not her supervisor, complained about and mocked her concerning her lack of command of the English language (Guerrero is a native Spanish speaker). Guerrero brought this incident to the attention of her supervisor, and thereafter, the offending employee left her alone.

On August 17, 2002, Guerrero filed a complaint of discrimination with the EEOC, alleging discrimination on the basis of race, age, national origin, and disability. On June 10, 2003, Guerrero filed suit in this Court, requesting relief on the following Counts: Count I — Discrimination based on Race and National Origin (Title VII, 42 U.S.C. § 1981); Count II — Hostile Work Environment (Title VII); Count III — Retaliation (Title VII); Count IV — Disability Discrimination (ADA); Count V — Age Discrimination (ADEA); and Count VI — Intentional Infliction of Emotional Distress.

On March 18, 2004, this Court granted Defendant's Motion to Dismiss as to Counts I, IV, and V of Plaintiff's Complaint. Thus, the counts remaining in Plaintiff's Complaint are Counts II and III, both of which allege violations of Title VII of the Civil Rights Act of 1964, and Count VI, which alleges a claim under Maryland state law.

On May 16, 2005, Defendant filed a Motion for Summary Judgement. The instant motion is ripe for review and the Court will now issue an Opinion.

## II.     SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted when no genuine dispute of material fact exists and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Haavistola v. Cmty. Fire Co. of Rising Sun, Inc.*, 6 F.3d 211, 214 (4th Cir. 1993); *Etefia v. East Baltimore Comm. Corp.,* 2 F.Supp.2d 751, 756 (D.Md. 1998). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed.R.Civ.P. 1). The court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520 (1991) (internal citations omitted). While the evidence of the non-movant is to be believed and all justifiable inferences drawn in his or her favor, a party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences. *See Deans v. CSX Transp., Inc.,* 152 F.3d 326, 330-31 (4th Cir. 1998); *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985).

### III.    ANALYSIS

#### A.    Count II — Hostile Work Environment

Plaintiff's Complaint alleges that she was subjected to a hostile work environment based upon her race and nationality. Defendant argues that Plaintiff has failed to demonstrate a *prima facie* case of hostile work environment. The Court agrees and will dismiss Plaintiff's claim.

In order to prevail on a claim of hostile work environment based on race and/or nationality, a plaintiff must prove that the offending conduct was: (1) unwelcome; (2) based upon her race and/or

nationality; (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment; and (4) imputable to her employer. *Ocheltree v. Scollon Productions, Inc.*, 335 F.3d 325, 331 (4th Cir. 2003) (en banc); *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998).

In this case, Plaintiff primarily cites to her encounters with an employee who worked in the Car Maintenance Department as evidence of a hostile work environment. Specifically, Plaintiff alleges that this employee, who was not her supervisor, complained about her lack of command of English. Plaintiff concedes that she brought this incident to the attention of her supervisor, and thereafter, the offending employee left her alone.

Plaintiff also refers to several altercations with WMATA employees. In her Complaint, Plaintiff cites to three incidents involving Verne as evidence of a hostile work environment: (1) on December 25, 2002, Verne shouted at Plaintiff; (2) on January 10, 2003, Verne called Plaintiff a "bitch" and attempted to block Plaintiff's way of passage; and (3) on March 21, 2003, Verne pushed and threatened Plaintiff. Additionally, Plaintiff testified in her deposition as to several other conflicts with co-workers.

The Court finds that Plaintiff has failed to establish a *prima facie* case of hostile work environment, as Plaintiff has not shown that the harassment was sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. In order to support a claim for hostile work environment, the alleged conduct must be both subjectively and objectively hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). In considering whether harassment is sufficiently pervasive to create a hostile work environment, a court should consider: (1) its frequency; (2) its severity; (3) whether it is physically threatening or humiliating, or mere offensive utterances; (4) whether it unreasonably interferes with an employee's work performance; and (5) whether it resulted in psychological harm. *Harris*, 510

U.S. at 23; *Conner v. Schrader-Bridgeport, Int'l, Inc.*, 227 F.3d 179, 193 (4th Cir. 2000).

Construing the evidence in the light most favorable to Plaintiff, her claim of hostile work environment fails because, under a totality of the circumstances, the conduct Plaintiff cites was not sufficiently pervasive or severe to alter a term or condition of Plaintiff's employment and thereby create an abusive work environment. The harassment was infrequent, and was not severe in character; the majority of the conflicts described by Plaintiff are more correctly characterized as arguments between co-workers as opposed to harassment. Plaintiff was not physically threatened, and the conduct did not unreasonably interfere with her work performance. In the one instance where Plaintiff was mocked for her inability to speak English, the situation was immediately rectified by her supervisor and did not occur again. Accordingly, the Court finds that Plaintiff's hostile work environment claim fails and will grant summary judgment as to Count II of Plaintiff's Complaint.

### B. Count III — Retaliation

Defendant argues that Count III of Plaintiff's Complaint, alleging retaliation in violation of Title VII, must be dismissed because Plaintiff failed to allege retaliation in conjunction with her August 17, 2002 EEOC Complaint. The Court agrees and will dismiss Plaintiff's claim.

Before a plaintiff has standing to file suit under Title VII, he must exhaust his administrative remedies by filing a charge with the EEOC. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir. 2000). The EEOC charge defines the scope of the plaintiff's right to institute a civil suit. *Id.* "An administrative charge of discrimination does not strictly limit a Title VII suit which may follow; rather, the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination." *Chisholm v. United States Postal Serv.*, 665 F.2d

482, 491 (4th Cir. 1981).

Here, Plaintiff's complaint of discrimination filed with the EEOC pertains solely to her allegations of harassment based upon race and national origin, age, and disability. Nowhere does Plaintiff indicate that she was retaliated against, either because she complained about prior discrimination or for any other reason. As such, the Court finds that Plaintiff did not exhaust her allegation of retaliation before the EEOC, and will grant summary judgment as to Count III of Plaintiff's Complaint.

### C.  **Count VI — Intentional Infliction of Emotional Distress**

In Maryland, in order to establish a claim of intentional infliction of emotional distress, a plaintiff must show that (1) the conduct was intentional or reckless, (2) the conduct was extreme and outrageous, (3) there was a causal connection between the wrongful conduct and the emotional distress, and (4) the emotional distress was severe. *Ford v. Douglas*, 799 A.2d 448, 451 (Md. Ct. Spec. App. 2002) (citing *Harris v. Jones*, 380 A.2d 611, 614-15 (Md. 1977)). Conduct is deemed outrageous and extreme "where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

The Court finds that Plaintiff cannot establish that the conduct she suffered was extreme and outrageous as required by Maryland law. As detailed above, Plaintiff's instant claim rests upon her allegations that a fellow employee mocked her ability to speak English and that she was involved in several altercations with WMATA employees. The Court finds that these incidents were isolated and do not amount to outrageous conduct that goes beyond all possible bounds of decency. As such, the Court will grant summary judgment as to Plaintiff's claim of intentional infliction of emotional distress.

## IV.     CONCLUSION

For all of the aforementioned reasons, the Court will GRANT Defendant's Motion for Summary Judgment [21]. An Order consistent with this Opinion will follow.

Date:   June 10, 2005                                       /s/
                                                        Alexander Williams, Jr.
                                                        United States District Court